I am Chelsea. I'm Chelsea Bray. And I'm a law student. Very good. Welcome. Thank you so much. And we have Reinaldo Valdez as the other arguer and Mr. Fernholz is the supervising attorney, right? Very well. Where is the government on the other side? Oh, there it is right there. Okay. Excellent. So you have two of you. You have 10 minutes for argument. How are you dividing your time? I'll be starting, Your Honor. And Reggie will be delivering our rebuttal for three minutes. Okay, very well. So you're going to save how many minutes approximately? So I'll be starting for seven minutes and he'll be responding for three. Very well. Please proceed. May it please the court. My name is Chelsea Bray, a law student on behalf of Appellate Sheikh Muhammad Al Saud. Under RLUPA, the department has conceded every point on which we have the burden, leaving them to demonstrate that their policies are narrowly tailored to serve a compelling state interest. They rely solely on Walker. I will address why Walker does not control. In doing so, I will also address why they have not demonstrated that granting Mr. Al Saud's request would violate the Equal Protection Clause. Based on the bare allegations of the complaint, they have not shown that granting Mr. Al Saud's individual request would, as a matter of fact, lead to state-imposed segregation. Let me ask you this, counsel. This is an unusual case from my perspective in that Walker just seems, except for the type of religious versus race, it seems to be just on all fours. It's decided at the pleading stage you've got a constitutional violation on one side versus a constitutional violation on the other side. What's the difference? How do we distinguish that? Yes, Your Honor. Walker is a small exception to the broad principle of granting religious accommodations. There, the plaintiff made a request for a religious accommodation that actually operated as race-based discrimination. That court was, this court, was bound by the Johnson decision, and in that opinion, the Supreme Court held that in rare instances involving prison security, race-based accommodations may be permissible. However, this court observed in the Walker opinion that the institution couldn't narrowly tailor the plaintiff's religious accommodation. How do we do that here? Again, the challenge, as I see it, is if they agree to your client's request, then you've got all these potential claims, almost certain claims, from the people that would be displaced based on religious differences that would have basically the mirror of the same claim that your own client has made. It's kind of an eternal round. You'd just never stop. People would be making all these claims, and it seems to fit squarely within Walker, and of course, Johnson was a little exception on that one. But help me with this. I just, I'm having difficulty seeing the difference. Yes, Your Honor. They haven't provided any evidence of this actually happening. Do they have to? They've pleaded. They do have to. Under Fulton, there has to be more than a speculative compelling state interest. Because your client isn't asking only for a housing arrangement that affects himself. He's asking to be housed with other Muslims. So even if there's a Muslim who doesn't care that he's not in a religiously segregated housing unit, in order to satisfy your client's request, they're going to have to move all the Muslims into the same housing unit. That's not speculation. That's the core of what your client has requested. Let me first clarify, Your Honor. My client is asking for a series of accommodations. First, he's asking to pray safely. Second, he's asking... Well, you start with that, but in fact, it's a pro se complaint. But the pro se complaint, as I read it, doesn't focus on safety nearly as much as he says it violates his faith to pray with infidels, infidels being somebody who's not a Muslim. Yes, Your Honor. What have I missed? They haven't demonstrated that they have a compelling state interest, and the burden is on them to demonstrate that they're positive. Well, it seems to me they have, because it's not simply your client's request. That's not speculation. Your client's request by itself affects all the other people in the housing unit. That means he's going to have a religiously segregated housing unit, not just him, the whole unit. Why isn't that a compelling interest? Because it seems to run pretty clearly afoul of Walker. Your Honor, they've provided no case authority that demonstrates that that would happen. Stop. How could it not happen? His request would affect everybody else in his housing unit. That's a factual question, and that's what he's asked for. Your Honor, just to clarify again, he's requesting three things. He's first requesting to pray a housing accommodation on the basis of those safety concerns. Well, okay. Point me to number one. Where is he asking simply to pray safely, and what requests has he made in terms of accommodations for that? I mean, if he had a prisoner safety issue, that's something the state could fairly be expected to respond to, and I thought at first that's what I was going to find. But when I looked at the complaint, that's not what I found. I did not find something that focused on safety. I found something that focused on it's violating my faith to make me pray with infidels. So he's requesting to pray safely and to be housed with other Muslims. Well, the second part appears to be the key of this case, as has been understood. He might reconfigure, or he might bring a new claim later that says, I'm not safe, focusing entirely on safety. That's not what this case has been focused on before, and I understand it's a pro se complaint, but it's still what the complaint says, and it focuses on who else is in the housing unit, as I read it. Am I wrong? So he is, one of the accommodations that he has requested is that he be housed with another Muslim. However, RLUIPA makes no distinction between a housing accommodation versus a dietary accommodation versus a religious service accommodation. Well, there is a difference, because a housing accommodation affects the other people in the housing unit. A diet accommodation presumably does not. You give this particular inmate this diet. That doesn't affect what everybody else gets. But if your accommodation is be housed only with other Muslims, that affects everybody else in the housing unit. Why isn't it like, I want a kosher meal, and I want everybody else to eat kosher, because it affects my faith to not have people, you know, non-kosher meals in my presence. It's more like that. Everybody's got to eat kosher. Yes, Your Honor. With that hypothetical, though, the burden would be on the institution as it is to demonstrate that that policy is narrowly tailored. A categorical ban on a housing policy accommodation requires evidence, and they have not presented any evidence that such a policy is not narrowly tailored. Okay. Now, we're down to the three-minute mark here. Let me ask my colleagues, either of you have questions of Ms. Bray, before we have her sit down and we'll have her colleague come up and rebut eventually. Any questions of her? Thank you very much. Thank you. So now, we're going to hear from the government. Mr. Schack, please. Yes. May it please the Court, my name is Daniel P. Schack. I'm an Assistant Attorney General at the State of Arizona, and I represent the defendants at Belize. I had planned on making only two points. The first of which was that Walker v. Beard does control, and the second was to address the qualified immunity. Your Honors have pretty much demonstrated how Walker is not significantly distinguishable from this case. Don't count too much on us. I'm sorry, Your Honor? Don't count too much on us. Our job is to probe and poke and see what kind of response we get. We don't want to exempt you from that process. Your points are pretty much the points we've made in our briefs and are the points that I was planning to make here. I am certainly willing to be probed as to those points. Well, let me focus on something that Ms. Bray was raising, which is safety. I think you understand the state does have an obligation to try to protect the personal safety of individuals in the housing unit. If his complaint is, gee, it's not safe because I have to pray five times a day and I got all these guys around yelling and screaming and threatening me because of that, what's the state's response to that? Your Honor, as it was pointed out during the opening, that was not the focus of the complaint. Indeed, the requested relief to have a blanket housing assignment that Mr. Saad be housed only with other Muslims would implicate the religious, it would discriminate on the basis of religion when the prisons are perfectly capable of making housing assignments based on safety that do not necessarily implicate a religious discrimination. Let's explore that then. Let's assume, arguendo, that his complaint could be fairly read as alleging just a safety issue. Given the nature of his claim, what are examples of what the prison system could do to accommodate his safety concern? It would be a matter of doing what they generally do when they assign housing and cellmates. They determine the compatibility of each inmate that would go into a double cell. That would, of course, include safety concerns. For instance, if the proposed inmate were known to have anti-Muslim feelings and to have acted violently, the ADCRR has a do not house with list. That person could be put on Mr. Al Saud's list. It would be a matter of finding another inmate of whatever religion who was willing to do following this gentleman, Mr. Al Saud's complaint. If he says nobody but a Muslim can understand what I'm doing here, nobody's going to respect it, in order for me to be safe, I have to be with another Muslim, which is kind of what he said here. But can the state interview people to inquire of their religious tolerance? So we've got 10 people, and they line them all up. Do they say, well, we need to talk to you about how tolerant you are of people who practice Islamic theology? Is that what they would do? I'm not sure exactly how they would do it. But I do not see any problem with that. That would be a decision based on tolerance for a cellmate's religious practice. It would not be a decision based on the individual's religion itself, which is what Mr. Al Saud is requesting. A blanket, don't house me with anybody who's not a block housing issue that my colleague, Judge Clifton, pointed out. Even if they ask an individual. It would not. It would indeed be a matter of having a cellmate or other inmates in the cell block who do not have a history of and who are not reasonably suspected of harboring violent reactions to Muslims, such as Mr. Al Saud, and who would therefore respect his religious practices. If I were to distill what I understand you to have said, if the complaint sounded in safety alone and not religion, the state prison authorities would interview potential co-cellmates to determine their views about Muslims and prayer and so on, and they could safely pick one or more people who would say that they were tolerant and had no record of violence against Muslims. That would solve the problem that Judge Clifton pointed out in terms of affecting everybody in the cell block, unlike what we have in this situation, where essentially you've got to shake up the whole system in order to satisfy what Mr. Al Saud has asked for. Is that correct? I cannot speak to how, because it wasn't raised below and we haven't gone into it, I cannot speak to how the prison would interview, if you will, potential cellmates. What they can do is, if there is a problem with one cellmate not respecting the other cellmate's religious practices and causes a danger, then that person can be moved, and they can also view the prison records of other inmates to see whether or not they have a history of religious intolerance and violence toward other religions. But in the end, whatever methodology is chosen, they can provide a cellmate and other inmates in the cell block who are not reasonably suspected of the possibility of inflicting religious violence on Mr. Al Saud. We don't have much of a record here because it was a motion for judgment on the pleadings, but do you happen to know from your work on this case or with the prison system, if there is a personal safety problem with regard to this plaintiff? Have there been episodes reported that you're aware of where he is at risk in terms of personal safety? I am not aware of others against Mr. Al Saud. It's somewhat ironic. Mr. Al Saud has several other appeals pending before this court in which he expresses a belligerence toward other religions, and he even said so in his complaint here, where he says that he has been fighting others who are non-Muslim. But as to your specific question, Judge Clifton, I'm not aware of any of those. But as we point out, if he had problems with his cellmate, then the ADCRR has procedures by which those problems could be addressed, and if that were indeed his claim here, that's the case that we would be defending, as opposed to, as was pointed out earlier, his main complaint is that he finds non-Muslims to be unclean, and they interfere with his association with his god, and therefore he wants nobody of any other religion to be in his area. And that would implicate the same problems that Walker addressed, based on religion in this case, as opposed to race. But of course, both of those are suspect classes that have the same standards applicable to them. If there are no further questions on that, I would just point out that if the court were to somehow decide that Walker doesn't apply, and that the department could have acceded to Mr. Al-Saud's request, his claim for damages is still barred, because there are no cases that would have put us on notice that not doing so violated his rights. And with that, if there are no further questions. Other questions by my colleague? Very well, thank you. All right, Mr. Valdez. Good morning, Your Honors. Good morning. You can take your mask off if you want to. Oh, yes, thank you. May it please the Court, Rekin Aldo Valdez on rebuttal. I'd like to make three points. The first is that Al-Saud is being harassed, and I'll provide some sites to the record. Second is that the government... I'm sorry, he is being... He is being harassed for being Muslim, that he has some safety concerns. And second is that the government has not narrowly tailored their compelling interest. And last, that Walker does not control. But with respect, it seems to me you're confusing some things, because at least on its face, Walker does seem to control, and it does answer the question that you have raised. That's what at least I'm struggling with. You've got protected classes in both instances. I don't see the difference. Your Honor... But what am I missing? Yes, Your Honor. The first sentence of Walker says that he's a devout racist, and his religion specifically says that he can only be housed with other white people. And so his religious accommodation request was really a racial accommodation that triggered Johnson. Al-Saud can be housed with anyone of any race as long as they're practitioners of Islam. That's... Maybe I misread the complaint. I thought he only wanted to be housed with Muslims, and he specifically demanded that. That was the prayer of his complaint. And if that happened, as my colleague pointed out, basically you restructure the entire prison block, because in order to have all Muslims, you've got to move them from other places and move other people, and it's a big mess. And then they bring claims, claiming that they've been discriminated against based on religion. That's Walker, isn't it, in effect? I would disagree, Your Honor, because the prison itself already uses race as a factor in housing accommodations, and it has a long list of religious accommodations already. And here, the government provided no other sort of solution to Al-Saud's problems, because he says he's being harassed, that he's unable to pray five times a day. What is the solution? But in order... Taking his complaint as demanding that he be housed only with Muslims... Yes, Your Honor. So he can pray in front of Muslims. What alternative, what accommodation could the state give that does not create, at the same time, a potential constitutional violation against the rights of other people as a result of your client's prayer? Your Honor, Al-Saud... What Al-Saud asked for was a very narrow request. He actually asked for, like, an array of accommodations, and one of them was to pray safely, one of them was to be housed with other Muslims, but his request of being housed with other Muslims was... Is a solution that solves his problem of being harassed while he's praying. So that was the easiest solution for him, but the government here bears the burden of proving that they have a valid, compelling interest. And while abiding with the Equal Protection Clause is a valid, compelling interest, they provided no case on point or shown that Al-Saud's accommodation would trigger the Equal Protection Clause. The government noted that the ADCR has procedures in place to, to, like, safeguard the safety of prisoners, and it didn't even respond with that here. Well, but, but, I mean, I looked at your client's complaint. I don't read it as you appeared to read it, as your colleague appeared to read it. I ask you again, can you point to the complaint that makes clear that this is a safety rather than religious accommodation? I'm not going to be housed with infidels, because the main thrust to me sure seems to be not with infidels. Yes, Your Honor. So the quote is, defendants refuse to respect my sincerely held faith by compelling me to be housed with racist, hateful inmates who have displayed very hostile behavior towards Muslims. Nothing in that sentence, and you picked out your favorite sentence, suggests a threat to his personal safety. They yell and scream and they have scornful attitudes toward Muslims, perhaps, but personal safety isn't implicated by that sentence. What in the complaint focuses it on personal safety? He also says that he's being harassed about being Muslim, and that he says that there are other prisoners who possess hatred towards Muslims, and it's really about him being unable to pray and being harassed during prayer, because he may not be alleging that he's not being physically assaulted, but according to the Quran, he has to pray with other Muslims. And because that's what the complaint actually seems to me to say, it seems to me much more not a personal safety issue. If he has a personal safety issue, I presume he has or will vocalize it to the Department of Corrections. But if it's, I'm not going to be properly housed if I have to have these infidels around me. That's the case that we've been discussing, and not the case that you seem to be trying to urge upon us right now. Well, Your Honor, even if we act under the assumption that he's just asking for a religious request, the government still did not narrowly tailor their compelling interest. So here, the ADCR, as the government pointed out, they could have easily taken Assad to another room the five times that he has to pray another day. The solution doesn't need to be exactly what Assad requested, but the government here bears the burden of narrowly tailoring their compelling interest. Okay, well, you're kind of regurgitating platitudes, but you're over time. Let me ask whether either of my colleagues has additional questions. Thank you, Your Honor. So I think we thank both of our law students. You did a fine job, and I'm sure that Mr. Saud will appreciate your excellent advocacy. The case of Al Saud versus Days is submitted.
judges: CLIFTON, SMITH, Reiss